82 S.W.3d 1 (2001)
Ernestina RODRIGUEZ, Appellant,
v.
The STATE of Texas, Appellee.
No. 04-99-00131-CR.
Court of Appeals of Texas, San Antonio.
March 7, 2001.
Discretionary Review Dismissed October 24, 2001.
*2 Adrienne Urrutia, San Antonio, for appellant.
Lucy Cavazos, Assistant District Attorney, Kerrville, for appellee.
Sitting: TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, SARAH B. DUNCAN, Justice.
Opinion by: SARAH B. DUNCAN, Justice.
Ernestina Rodriguez was convicted and sentenced to life in prison for the capital murder of her two and a half month old baby by starvation. On appeal, Rodriguez complains that her trial counsel's deficient performance violated her constitutional right to effective assistance of counsel. Among Rodriguez's arguments is that although credible qualified medical testimony controverting starvation as the cause of the baby's death was readily available,[1] her trial counsel "failed to controvert, in any meaningful way, the State's medical expert testimony." In response, the State argues Rodriguez's allegation of ineffective assistance must be rejected because it is not "firmly founded in the record." Thompson v. State, 9 S.W.3d 808, 813 (Tex.Crim. App.1999). Rodriguez counters that, if this is so, it is because the district court abused its discretion by failing to grant her an evidentiary hearing on her motion for new trial. We agree and therefore abate this appeal and remand the cause to the trial court for an evidentiary hearing on Rodriguez's motion for new trial.

Discussion
Given its apparent availability, we are unable to discern any plausible trial strategy for failing to introduce credible controverting expert testimony on the causation issue. However, because the trial court did not conduct a hearing on Rodriguez's motion, we are without the benefit of trial counsel's explanation. On this record, we are unwilling to hold the allegation of ineffective assistance is "firmly founded" in the record. We must therefore determine whether the record should be supplemented by a hearing on Rodriguez's motion for new trial.
"[T]he right to a hearing on a motion for new trial is not truly an `absolute right.'" Reyes v. State, 849 S.W.2d 812, 815 (Tex.Crim.App.1993). "[A] hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record." Id. at 816. "On the other hand,..., in certain instances the trial judge abuses his discretion in failing to hold a hearing on a motion for new trial that raises matters which are not determinable from the record." Id. "`[A]s a prerequisite to obtaining a hearing' and `as a matter of pleading,' motions for new trial [must] be supported by affidavit, either of the accused or someone else specifically showing the truth of the grounds of attack." Id. (quoting Hicks v. State, 75 Tex.Crim. 461, 171 S.W. 755, 763 (1913)). Requiring an affidavit is designed "to limit the parameters *3 of the hearing that is sought" and prevent "limitless fishing expeditions." McIntire v. State, 698 S.W.2d 652, 659 (Tex.Crim.App.1985); Vyvial v. State, 111 Tex.Crim. 111, 10 S.W.2d 83, 84-85 (1928).
Rodriguez's verified motion for new trial plainly does not constitute a "fishing expedition." Rather, it raises a particular matter not determinable from the record trial counsel's deficient performance in failing to investigate the causation issue adequately and, as a result, in failing to controvert the State's expert medical testimony. In addition, the motion details the probable testimony of the Chair of the Department of Human Ecology at the University of Texas at Austin, Dr. Steven D. Clarke; and it attaches correspondence from Dr. Clarke to Rodriguez's appellate counsel. In this correspondence, Dr. Clarke concludes that "[t]here is every possibility that [Rodriguez's baby] died of... an in-born error of metabolism" and that it is the opinion of his colleague, Dr. Margarita Teran, a pediatrician from Mexico City, "that although the baby did not grow from birth until death, the baby did maintain body weight which indicates that the child did not likely die from starvation" and "the mom would not realize there might be a problem with the baby until it was too late."[2]
Citing Reyes, however, the State argues Dr. Clarke's unsworn correspondence is insufficient to mandate a hearing. We agree. But the affidavit requirement and the policies underlying itare met by the level of detail contained in Rodriguez's motion and its verification by her appellate counsel. The verified motion plainly sets forth trial counsel's statements regarding his minimal efforts to investigate the cause of death, appellate counsel's ease in locating and securing controverting expert testimony, and Dr. Clarke's proposed testimony. Because Rodriguez's verified motion for new trial raises a particular matter that cannot be determined by the record and upon which relief may be granted, we hold Rodriguez's verified motion for new trial meets Reyes' requirements. See Redmond v. State, 30 S.W.3d 692, 700 (Tex. App.Beaumont 2000, no pet.) ("The judicially imposed requirement of an affidavit or verification as a prerequisite for an evidentiary hearing on a motion for new trial has existed throughout the various incarnations of the governing precept.") (emphasis added); Belton v. State, 900 S.W.2d 886, 901 (Tex.App.-El Paso 1995, pet. ref'd) ("The Court has consistently held that without verification or affidavit, a motion for new trial based on matters outside the record is insufficient as a pleading.") (emphasis added) (citing Bearden v. State, 648 S.W.2d 688, 690 (Tex. Crim.App.1983)). Cf. Alcott v. State, 26 S.W.3d 1, 4-5 (Tex.App.-Waco 1999, pet. granted) (holding verified motion for new trial did not require a hearing because it "lacks sufficient detail to put the trial court on notice that reasonable grounds for relief exist").

Conclusion
Rodriguez's detailed and verified motion for new trial, coupled with Dr. Clarke's *4 correspondence and the affidavits attached to the motion, raise matters that cannot be determined from the record and upon which she may be entitled to relief. A hearing is therefore necessary. Accordingly, we abate this appeal and remand the cause to the trial court to conduct an evidentiary hearing on Rodriguez's motion for new trial.
TOM RICKHOFF, J., concurs.
Concurring opinion by: TOM RICKHOFF, Justice.
Sadly, for this panel, this tragic case is all too memorable.[1] Now, following this young mother's conviction and sentence to life in prison for capital murder of her baby by starvation, we are asked whether the denial of an evidentiary hearing, by the trial judge who presided over both causes just five months apart, was an abuse of discretion.
I have long felt that trial courts are selfconstrained when faced with ineffectiveness of counsel challenges and that intermediate appellate courts are hampered by a standard of review that is too rigid. See Mitchell v. State, 23 S.W.3d 582 (Tex. App.San Antonio 2000, pet. ref'd); Bone v. State, 12 S.W.3d 521 (Tex.App.-San Antonio 1999, pet. granted); see also State v. Zapata, No. 04-00-00238-CR, 2001 WL 80466 (Tex.App.-San Antonio Jan. 31, 2001, no pet. h.) (Rickhoff, J., concurring) (not designated for publication) ("My deep concern that ineffective assistance of counsel issues are rarely acted on by trial judges is relieved by the vigilance and fairness of this trial judge. It remains, however, too difficult for our intermediate appellate judges to intervene."). We recognize we are expanding our reach by considering Dr. Clarke's unsworn correspondence. But, in the termination case, this same trial judge considered Dr. Clarke's testimony to be important enough to engage him in the following colloquy from the bench when the judge was seeking to determine whether this defendant endangered this baby:[2]
Q: ... Is your testimony that this baby was fed properly, but that the baby's system did not absorb the nutrient from the food it was being fed and it died? There's nothing you can do about it. This baby had a system that couldn't absorb food and so it was going to die?
A: That's exactly what I'm saying.
Q: So if you take the baby to the hospital, there's nothing much the doctors can do about a baby that has a situation like this?
A: I think that there is some things. They would not have seen the diagnosis. They would not have seen it. Whether they could have come up with some hit-or-miss source of therapies, I think that's a possibility.
Q. You know, my situation is I'm looking at a parent or a couple of parents that have a child that hasn't gained any weight and the pictures look something out of a Third World country, and whether or not a reasonable parent, somebody that we think is doing what they're supposed *5 to do in taking care of someone in their care, would have taken this child in and said, "Let's figure out why this child is not gaining weight, why its ribs are showing and its skull looks like a death mask." Should they have taken this child in, even though you say there is nothing they can do about it, if it's going to die?
A: I think that's a reasonable expectation, yes.
Q. All right. The pictures look pretty bad.
A. I agree.
As a former trial judge myself I have heard hundreds of termination and murder cases. While the evidence may be the same in each and the consequences for the parent equally dire, the intent element and the burden of proof (substantial evidence to reasonable doubt) are very different. From my review of this record the missing evidence here could be determinative.
NOTES
[1] Shortly after sentencing, Rodriguez's trial counsel withdrew, and the trial court appointed Adrienne Urrutia Zuflacht to represent Rodriguez on appeal. Within thirty days of her appointment, Zuflacht had investigated the causation issue and, as detailed in Rodriguez's motion for new trial, secured the favorable opinions of two nutrition experts. We take this opportunity to express our appreciation to Ms. Zuflacht for the two very helpful briefs she has submitted to this court and for her overall performance, which exemplifies a lawyer's duty to "act with competence, commitment and dedication to the interest of the client and with zeal in advocacy upon the client's behalf." Tex. Disciplinary R. Prof'l Conduct 1.01, Comment 6, reprinted in Tex. Gov't Code, tit. 2, subtit. G app. A (1998) (TEX. STATE BAR R art. X, § 9).
[2] That Dr. Clarke and Dr. Teran would in fact testify as stated in the motion is shown by their sworn testimony in the subsequent suit seeking to terminate the parent-child relationships between Rodriguez and her three children. We take judicial notice of this testimony, which is part of the appellate record in appeal number 04-99-00729-CV, styled In the Interest of P.P. See Hawkins v. State, 613 S.W.2d 720, 722 n. 4 (Tex.Crim.App.), cert. denied, 454 U.S. 919, 102 S.Ct. 422, 70 L.Ed.2d 231 (1981); Huffman v. State, 479 S.W.2d 62, 68 (Tex.Crim.App.1972). In so doing, we recognize this testimony was not before the trial court at the time Rodriguez filed her motion for new trial and thus cannot properly be considered in determining whether the trial court erred in failing to conduct a hearing on Rodriguez's motion.
[1] In In the Interest of P.P., No. 04-99-00729-CV, 2000 WL 33142404 (Tex.App.-San Antonio Nov. 22, 2000, no pet.), we considered the termination of this defendant's parental relationship with her surviving children and found the evidence of endangerment was "more than sufficient."
[2] The testimony of Dr. Clarke and Dr. Teran-Garcia in the termination case occurred on July 2, 1999. The judgment in the criminal trial was signed by the same judge on February 5, 1999, almost six months earlier. The motion for new trial in this criminal case was filed on March 5, 1999.