OPINION


No. 04-04-00675-CR

Jason STOGIERA,
Appellant

v.

The STATE of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2003-CR-5460
Honorable Raymond Angelini, Judge Presiding
 
Opinion by:    Catherine Stone, Justice
 
Sitting:            Catherine Stone, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
 
Delivered and Filed:   November 23, 2005 

ABATED AND REMANDED
            Jason Stogiera was convicted by a jury of criminal solicitation with the intent to commit
aggravated sexual assault of a child and sentenced by the trial court to fifteen years imprisonment. 
On appeal, Stogiera contends: (1) the trial court erred in failing to conduct a hearing on his motion
for new trial; (2) trial counsel rendered ineffective assistance of counsel; and (3) the evidence is
legally and factually insufficient to support his conviction. Because Stogiera’s motion for new trial
raised issues that were not determinable from the record, the trial court abused its discretion in
failing to grant Stogiera an evidentiary hearing. Accordingly, we abate the appeal and remand the
cause to the trial court for an evidentiary hearing on Stogiera’s motion for new trial. Even though
we abate the appeal, we also address Stogiera’s issue regarding the sufficiency of the evidence.
Sufficiency of the Evidence
            In his fourth issue, Stogiera contends that the evidence is legally and factually insufficient
to support his conviction. In reviewing a legal sufficiency challenge, we view the evidence in the
light most favorable to the verdict, and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319 (1979). In conducting a factual sufficiency review, we view all the evidence in a neutral light
and will set aside the verdict only if the evidence is so weak that the verdict is clearly wrong and
manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable
doubt could not have been met. Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004)
(citing Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004)). The jury evaluates the
credibility and demeanor of witnesses and determines the weight afforded contradicting testimony.
Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).
            Stogiera contends that the evidence is insufficient because it fails to prove that he intended
to act on the solicitation to commit the felony offense. Stogiera contends that the evidence
establishes that he was fantasizing and his objective was not to have sex with a child.
            Detective Anthony Smith received a telephone call from a female identified as Jackie who
stated that she had come in contact with an individual through a telephone dating service who might
be involved in criminal activity. The individual was later identified as Stogiera. Jackie agreed to
tape record her conversations and later provided those tapes to the investigating detectives. After
reviewing the tapes and the information provided by Jackie, the detectives believed Stogiera could
be engaged in sex with his fifteen-month-old child. Jackie appeared to be concerned and agreed to
continue recording the conversations. Eventually, Jackie set up a meeting with Stogiera at a
restaurant. When Stogiera arrived for the meeting, he parked far away from the restaurant despite
closer available parking. After Stogiera made contact with an undercover officer posing as Jackie,
he was arrested.
            While transporting Stogiera to the police station, Detective Michalec informed him that they
had listened to tape recorded conversations between he and Jackie, whom Stogiera knew as Kendall. 
Detective Michalec further informed Stogiera that the conversations indicated that he and his wife
were engaging in sex with their fifteen-month-old child. Detective Michalec told Stogiera that he
was the subject of an ongoing investigation and that officers had been dispatched to his home to
ascertain if any evidence of child molestation existed. Detective Michalec testified that a computer
was seized by other officers which, he later discovered, did not contain any evidence.
            Stogiera gave a voluntary statement after his arrest. In his statement, he admitted placing a
greeting with Quest Personals stating that he was looking for “open-minded women who were into
very kinky and taboo sexual subjects.” A woman named Kendall responded to his greeting. Stogiera
made up that he had a fifteen-month-old and a four-year-old daughter. Stogiera told Kendall he was
interested in a woman who would have sex with his fifteen-month-old daughter. Kendall asked what
sexual acts he had performed on his daughter, and Stogiera described various sex acts. Stogiera
asked if Kendall would be interested in allowing him to have sex with her two-year-old daughter. 
Stogiera and Kendall agreed to meet for a drink and get to know each other better. Stogiera would
follow Kendall to her house and “see what came of it when we played with her daughter.” When
Stogiera approached a woman matching the description Kendall had given him, he was arrested.
            Jackie Sellards testified that Stogiera identified himself as John on the dating service. 
Stogiera caught Jackie’s attention with his greeting stating that he was interested in talking to women
“who are interested in taboo and perverted things that are frowned on by society.” Based on
statements made by Stogiera during various conversations, Jackie was concerned that he was
molesting his children. Jackie contacted child protective services, who advised her to contact the
police. Jackie then contacted Detective Smith who asked if she could record her conversations with
Stogiera. Jackie later turned the tapes over to the detectives. Jackie denied that there were gaps in
the conversations on the tapes or that the tapes had been edited. The tapes were then played for the
jury. Stogiera stated several times in the tapes that he was really serious. Stogiera volunteered the
information regarding the sexual acts in which he engaged and in which he wanted to engage without
prompting from Jackie. Stogiera also mentioned the possibility of going to prison for those actions. 
In discussing their meeting, Stogiera stated he was nervous and wanted to pat Jackie down to make
sure she was not a cop and was not wired. Stogiera wanted to meet at the bar, go back to his car to
pat Jackie down, and then go to her house to have sex with her daughter. 
            During cross-examination, Jackie was asked several questions regarding her active
involvement in locating Stogiera for conversations. Jackie acknowledged making up information
in her conversations to make Stogiera more comfortable. Jackie did not respond to defense counsel’s
question regarding whether she “repeatedly asked [Stogiera] to participate in this offense.” 
            Officer Rosemary Flores, the undercover officer who posed as Kendall, testified that Stogiera
approached her and asked if she was Kendall. They exchanged a brief conversation, and Stogiera
said he needed to do the pat-down. Stogiera suggested going to Kendall’s van for the pat-down to
make sure she was not a cop. Although Flores assumed Stogiera would order a drink and perhaps
they would order dinner, Stogiera did not order a drink or give any indication that he wanted to order
dinner. 
            Based on the evidence presented, the jury could have believed that Stogiera intended to meet
Jackie and return to her home to engage in sexual activity with her two-year-old daughter. Stogiera
acknowledged that a plan was formulated on this basis, and Stogiera acted on the plan. Stogiera
stated that he was aware of the possible criminal sanctions for his actions and expressed a desire to
pat-down the undercover officer portraying “Kendall” to ensure that she was not a cop. The jury
could have inferred that the pat-down would not have been necessary if Stogiera had not intended
to engage in any criminal activity. Accordingly, the evidence is legally and factually sufficient to
support the conviction.
Motion for New Trial
            In his first issue, Stogiera contends that the trial court erred in failing to conduct a hearing
on his motion for new trial which clearly raised disputed factual issues requiring development. After
judgment was entered, Stogiera hired new counsel to file a motion for new trial. 
            In his motion for new trial, Stogiera asserted ineffective assistance of counsel. Specifically,
Stogiera asserted counsel failed to gather mitigating evidence by failing to: (1) investigate Stogiera’s
personal, familial, and psychological background; (2) inquire into Stogiera’s mental health and
sexual abuse history for purposes of understanding the actions leading to the charged offense; (3)
question the psychologist who evaluated Stogiera on behalf of child protective services; and (4)
determine whether an “Able Assessment” should be performed to ascertain Stogiera’s future risk to
the community and likelihood of improvement with sexual offender therapy and treatment. Stogiera
asserted that by failing to engage in a reasonable investigation, defense counsel failed to obtain
mitigating evidence that was otherwise available. Stogiera also asserted that trial counsel was
ineffective in failing to call available expert witnesses to testify during the punishment hearing,
specifically, Sue Jurecko and Dr. Mark Steege, both of whom evaluate sexual offenders for purposes
of recommending treatment and punishment.
            Attached to Stogiera’s motion for new trial were several affidavits, including the affidavits
of: (1) Ray Taylor, an attorney who is board certified in criminal law; (2) Mark W. Steege, a licensed
clinical social worker and licensed professional counselor; (3) Sue Jurecko, a licensed professional
counselor and licensed psychological assistant; (4) Dinah Dumais, Stogiera’s mother; (5) Elizabeth
Comer, Stogiera’s grandmother; (6) Tina Freund, Stogiera’s ex-wife; and (7) Betty Lou Schroeder,
Ph.D., a licensed psychologist who the court appointed to evaluate Stogiera after judgment was
entered and new counsel entered an appearance.
            Ray Taylor stated a psychological evaluation should have been requested by trial counsel to
determine if mitigating evidence existed for punishment and if evidence existed that would support
Stogiera’s “fantasy” defense. Taylor opined that trial counsel was ineffective in failing to obtain a
psychological evaluation and report, called an Abel Assessment, and to introduce the report into
evidence.
            Mark W. Steege testified that he had several contracts with state and county entities to
evaluate and treat sex offenders. Although Steege stated that he had not reviewed Stogiera’s records,
he testified that interviewing Stogiera would have enabled Steege to testify as to Stogiera’s potential
threat or danger to the community in general, his potential for rehabilitation, his acceptance of
responsibility, and his potential for re-offending. At a minimum, Steege stated that an Abel
Assessment, a clinic evaluation, a psychological evaluation, and a standard risk assessments test
should have been performed. Steege then summarized what each test could show and each test’s
importance to punishment and treatment alternatives.
            Sue Jurecko saw Stogiera in individual therapy for eight sessions while conducting her
interviews for the child protective services investigation. During those sessions, Stogiera admitted
the offense and took full responsibility. Stogiera showed appropriate remorse and guilt and did not
minimize his aberrant behavior. Stogiera focused on learning about his cycle of deviancy and gained
insight into the behavior that led him to the offense. When CPS’s investigation was closed, Stogiera
voluntarily continued counseling with Jurecko, but the sessions ended when Stogiera did not have
sufficient funds to pay. Jurecko stated that she would have been available to testify at Stogiera’s
punishment hearing if she had been called. Jurecko stated her professional opinion that Stogiera was
not a risk to any child and would not reoffend.
            Dinah Dumais stated that Stogiera had a troubled relationship with his biological father. 
During standard visitations beginning at the age of five, Stogiera’s father forced him to watch
pornographic movies. When Stogiera was sixteen, his father took him to Jamaica, got him drunk,
and actively sought a prostitute for Stogiera. Furthermore, when Stogiera was five, a ten-year-old
girl fondled him during a visitation with his father.
            Elizabeth Comer stated that after making an inappropriate comment to her during a television
movie, Stogiera confessed to her that he had been fondled at the age of five. He also told Comer that
his father forced him to watch pornographic movies. Finally, Stogiera sought to borrow $2,000 from
Comer to pay for a phone bill resulting from Stogiera’s calling 900 numbers to engage in phone sex.
            Tina Freund stated that Stogiera was a caring and loving father. Freund believed that
Stogiera had self-esteem issues resulting from his relationship with his father and step-father. 
Stogiera told her that his father took him to Jamaica to “make a man out of him.”
            Stogiera was referred to Betty Lou Schroeder, Ph.D. for an evaluation after new counsel was
retained. Schroder’s affidavit included a summary of her evaluation. Schroder concluded, “There
is rather overwhelming evidence that this man is not dangerous but would benefit from a strong
treatment program.”
            A defendant is entitled to a hearing on his motion for new trial if the motion and
accompanying affidavits raise matters not determinable from the record, upon which the accused
could be entitled to relief. Wallace v. State, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). To be
sufficient to entitle the defendant to a hearing, the motion for new trial and accompanying affidavits
need not establish a prima facie case for a new trial. Id. Rather, they must merely reflect that
reasonable grounds exist for holding that such relief could be granted. Id. The purpose of the
hearing is to give the defendant an opportunity to fully develop the matters raised in his motion. Id. 
If the trial court denies a hearing on the motion for new trial and the defendant appeals from that
denial, the appellate court must review the trial court’s decision for abuse of discretion. Id.
            Only two witnesses were presented on Stogiera’s behalf during the punishment phase of trial. 
One witness knew Stogiera through her son and stated he was not a danger to the community. On
cross-examination, the witness stated that she was aware of the details of the offense for which
Stogiera was convicted. The other witness, who was a family friend, also stated that Stogiera was
not a danger to the community; however, on cross-examination, the witness was unaware of some
of the details of the offense for which Stogiera was convicted. In addition to the two witnesses, trial
counsel presented the judge with various letters from friends and families requesting leniency.
            The record in this case does not reveal why trial counsel did not pursue the psychological
analysis which Jurecko, Steege, and Taylor all state would be critical in, at the very least, mitigating
punishment. Trial counsel has been held to be ineffective in failing to seek out, investigate, and
interview available witnesses during the punishment phase. Freeman v. State, 167 S.W.3d 114, 120-21 (Tex. App.—Waco 2005, no pet.); Milburn v. State, 15 S.W.3d 267, 270 (Tex. App.—Houston
[14th Dist.] 2000, pet. ref’d). In this case the record shows that trial counsel was aware of Stogiera’s
counseling with Jurecko; however, the record is silent regarding the reason trial counsel failed to
further pursue the psychological issue to mitigate punishment. Because we cannot determine from
the record whether the failure to pursue the psychological evidence was part of counsel’s trial
strategy, the trial court was required to hold a hearing on Stogiera’s motion for new trial in which
the factual basis for his ineffective assistance of counsel claim could have been fully developed. 
Rodriguez v. State, 82 S.W.3d 1, 3-4 (Tex. App.—San Antonio 2001, pet. dism’d); Mendoza v. State,
935 S.W.2d 501, 503 (Tex. App.—Waco 1996, no pet.)
            The State asserts that the trial court was not required to hold a hearing on the motion because
even if the allegations were true, the granting of a new trial would not be warranted. This assertion
by the State appears to ignore the distinction between entitlement to a hearing on a motion for new
trial and entitlement to a new trial. Whether a defendant is entitled to a hearing on a motion for new
trial is a separate question from whether he should ultimately be granted a new trial. Wallace, 106
S.W.3d at 108; see also Lemmons v. State, No. 02-04-00086-CR, 2005 WL 1356270, 1 (Tex.
App.—Fort Worth June 9, 2005, no pet.) (not designated for publication). If a defendant’s motion
and affidavit are sufficient, a hearing on the motion is mandatory. Jordan v. State, 883 S.W.2d 664,
665 (Tex. Crim. App. 1994). In the case cited by the State, Hernandez v. State, 84 S.W.3d 26, 33
(Tex. App.—Texarkana 2002, pet. ref’d), the court held that a hearing was not required because the
issue raised in the motion for new trial was determinable from the record. In this case, trial counsel’s
reasons for not pursuing and presenting the psychological evidence is not determinable from the
record. 
            We stress the unique posture of the case before us. In his argument during the punishment
phase of trial, trial counsel refers to Stogiera’s counseling with Jurecko; accordingly, the record
reflects that trial counsel had information that should have put him on notice of the psychological
issue that the affidavits attached to the motion for new trial allege should have been further pursued. 
The record is silent, however, as to the reason the issue was not pursued. Absent a developed 
record, the merits of Stogiera’s ineffective assistance of counsel complaints would not be “firmly
founded in the record” and would not be reviewable on direct appeal. See Thompson v. State, 9
S.W.3d 808, 814 (Tex. Crim. App. 1999); see also Wiggins v. Smith, 539 U.S. 510, 517-19 (2003)
(reviewing ineffective assistance of counsel complaint based on failure to perform adequate
investigation in context of denial of post-conviction relief where record contained testimony of trial
counsel regarding intended strategy); Freeman v. State, 167 S.W.3d at 119 (finding ineffective
assistance of counsel based on trial counsel’s failure to perform an adequate investigation of the
defendant’s mental health history where record contained testimony of trial counsel developed at a
hearing on motion for new trial).
 
 
Conclusion
            Because an evidentiary hearing should have been granted on Stogiera’s motion for new trial,
the appeal is abated, and the cause is remanded to the trial court to conduct a hearing on Stogiera’s
motion for new trial. Martinez v. State, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002) (setting forth
proper remedy). The trial court is directed to hold the hearing and to cause to be filed in this court
a supplemental clerk’s record containing the trial court’s order on the motion for a new trial and a
reporter’s record containing a transcript of the hearing within ninety days from the date of this
court’s judgment.
 
Catherine Stone, Justice

PUBLISH