**Opinion issued January 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01043-CR

_____

**JONNIE DENT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1296532**

---

## MEMORANDUM OPINION

The State charged Jonnie Dent with aggravated robbery of an elderly individual, a first-degree felony, enhanced by one prior felony conviction. A jury heard the case and found Dent guilty of the lesser-included offense of intentionally or knowingly causing bodily injury to an elderly individual. _See_ TEX. PENAL CODE

ANN. § 22.04 (West Supp. 2013). After finding the enhancement allegation true, the jury assessed punishment at twenty years' confinement.

In his appeal, Dent contends that (1) his trial counsel rendered ineffective assistance in violation of the sixth amendment of the United States Constitution; (2) the trial court erred in refusing to strike the jury panel; and (3) insufficient evidence supports the court costs reflected in the judgment. We hold that the record does not support Dent's charge of ineffective assistance of counsel, the trial court acted within its discretion in refusing to strike the jury panel, and sufficient evidence supports the court cost assessment. We therefore affirm.

**Background**

Dent's great-grandparents, Odessa and Charles Williams, raised Dent from infancy. As an adult, Dent visited them at their home near Martin Luther King Boulevard in Houston, but he did not have a key to the residence. At the time of the incident, Odessa was 83 years old and Charles was 76 years old.

In February 2011, in the middle of the night, Dent came to the home and demanded money from Odessa. Dent followed her to her bedroom and waited as she reached under her pillow for her coin purse, which contained about seven dollars in change. Odessa did not want to count her money in front of Dent, so she tried to slip by him to go into another room. As she tried to pass, Dent struck her with his hand. Odessa's head hit the bedpost. She fell into the wall and then onto

2

the floor. The open coin purse fell out of Odessa's hand, and coins spilled out onto the floor. Dent picked up the change and left. Odessa called the police because she wanted to make sure Dent would stay out of the house for the night.

The police arrived and interviewed Odessa and Charles about the incident. They photographed the swelling on the left side of Odessa's head and offered to call an ambulance, but she refused medical treatment.

## Discussion

### I.  *Strickland* **Claim**

Dent contends that his trial counsel failed to represent him effectively because he behaved rudely in front of the jury during voir dire and because he had received substantial negative publicity during his campaign for district attorney. Dent also complains that trial counsel's hearing impairment prevented him from providing effective assistance and that counsel's deficient performance opened the door to a number of Dent's prior extraneous offenses. Finally, Dent complains that his second-chair trial counsel failed to provide effective assistance during the punishment phase of the trial by failing to raise Dent's mental illness as a mitigating factor.

To prevail on an ineffective-assistance-of-counsel claim, the defendant must show that (1) his counsel's performance was deficient and (2) a reasonable probability exists that the result of the proceeding would have been different.

3

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2065 (1984); *see also Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). A defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats his ineffectiveness claim. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (en banc). We apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We also presume trial counsel's actions were reasonably professional and motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

The record must firmly support a claim of ineffective assistance. *Thompson*, 9 S.W.3d at 813. Where the record does not offer an explanation for counsel's actions, we presume that counsel exercised reasonable professional judgment in making all significant decisions. *Jackson*, 877 S.W.2d at 771; *Broussard v. State*, 68 S.W.3d 197, 199 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (en banc).

"Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Dent raised his *Strickland* claims in a motion for new trial, but neither of his trial attorneys testified to explain their challenged conduct. When the record does not reflect counsel's reasons for the challenged

4

conduct, an appellate court will assume a strategic motivation if any can possibly be imagined, and it will not conclude that the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 440.

### Trial counsel's behavior during voir dire

Dent complains that trial counsel prejudiced the jury against him by disobeying the court's directions and requesting a break during voir dire. The reporter's record shows the following exchange:

Court: Mr. Oliver, on behalf of the defendant. Are you ready to go forward?

Counsel: On behalf of the defendant, I request a 10-minute break, Your Honor.

Court: Counsel, I said I wasn't going—

Oliver: Can we take a vote?

Court: And I said don't embarrass me by asking. So, no break. Let's go forward.

Counsel: Would anyone join me in my request for a break for a 10-minute break?

. . .

Court: The break will be an hour because I have another court to be in. So, if we take a break for an hour—

Venire member: No.

Court: All right. Let's begin, counsel.

Counsel: All right

. . .

Counsel: Right. Yes. I was going to say good morning, but good afternoon, ladies and gentlemen. Can we stand up and maybe stretch. Okay. There you go.

5

Court:     I'm going to another court, Counselor.  We will take an hour break.  Everybody can go to lunch.

Out of the jury's presence, the trial court admonished defense counsel for "disrupt[ing] the orderly proceedings of [the c]ourt."

When voir dire resumed, trial counsel promptly apologized and asked the panel whether his behavior prejudiced them against the defense.  Some panel members expressed the opinion that defense counsel had acted extremely rudely to the court.  The trial court asked the panel members to raise their hands if they would be prejudiced against Dent due to his counsel's behavior.  Most of the sixty-five panel members responded that their opinion of trial counsel's conduct had not prejudiced them against Dent, expressing that they would still be able to sit as fair and impartial jurors in the case.  Twelve panel members responded that they could not be fair to Dent due to defense counsel's conduct.

When it came to selecting the jury, Dent's counsel and the State agreed on all challenges for cause except defense counsel's challenge to panel member 21, who said that defense counsel's conduct angered her but that she could still be fair to Dent.  Each side received and exercised ten peremptory strikes, and panel member 21 was not seated on the jury.

Dent compares his situation to that addressed in *Miller v. State*, 728 S.W.2d 133 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd).  In *Miller*, our sister court held that trial counsel's offensive and abusive behavior throughout trial rendered

6

his representation ineffective. *Id.* at 134. Unlike counsel in *Miller*, though, trial counsel's misbehavior in this case was directed at the trial court, not the panel or his client. Counsel's misbehavior was brief, he apologized to the panel for it, and the trial court and the State worked with defense counsel to ensure that any panel member who expressed prejudice as a result of it was not seated on the jury. Dent does not identify any panel member who expressed an inability to consider the charges against Dent fairly because of counsel's behavior during voir dire and was, nevertheless, seated on the jury. We hold that the record does not support Dent's burden to show that a reasonable probability exists that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Andrews*, 159 S.W.3d at 101–02.

### *Negative publicity connected with trial counsel's run for public office*

Dent claims that negative publicity about trial counsel's bid for public office rendered his assistance ineffective. Dent, whose trial took place shortly before Election Day, points specifically to a community newspaper article that appeared the day of jury selection and contends that its harsh criticism of trial counsel influenced the jury against him.

The trial court instructed jury during voir dire not to read or listen to any story in the media about the case or the defendant. The next day, the trial court supplemented its prior instruction, admonishing jurors not to read or listen to

7

anything in the media about the lawyers in the case. At the end of each day of trial, the trial court reminded jurors "not to read or listen to anything about the case or about the lawyers. So don't read anything about the attorneys, as well; or if there is anything on the news about the attorneys, please turn that off."

Nothing in the record shows that any juror disobeyed the court's instructions and heard or read negative publicity concerning Oliver. "We will 'presume[] that jurors, conscious of the gravity of their tasks, attend closely the particular language of the trial court's instructions in criminal cases and strive to understand, make sense of, and follow the instructions given them.'" *DeBlanc v. State*, 799 S.W.2d 701, 711 (Tex. Crim. App. 1990) (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9, 105 S. Ct. 1965, 1976 n.9 (1985)). The record on direct appeal does not demonstrate that trial counsel's run for public office rendered him ineffective in representing Dent.

### Counsel's hearing impairment

Dent further complains that trial counsel's hearing impairment made him unable to follow the proceedings, thereby making his representation inadequate. Dent likens his situation to that of the defendant in *State v. Gill*, 967 S.W.2d 540 (Tex. App.—Austin 1998, pet. ref'd). In *Gill*, the Austin court of appeals affirmed the trial court's order granting the defendant's motion for new trial, holding that counsel's ongoing health problems, including hearing loss, rendered him unable to

8

effectively represent Gill. We find *Gill* inapposite. The record in that case showed that, in addition to hearing loss, counsel had numerous serious problems such as senility, cerebral atrophy, continuous alcohol abuse, severe heart problems, and reduced vision, and he had recently been released from the hospital. *Id.* at 543 & n.2. Counsel made a number of significant legal errors during the proceeding that apparently resulted from his disabilities. *See id.* at 542–43. The record in this case, however, does not show that defense counsel's actions at trial were "so outrageous that no reasonable competent trial attorney would have done likewise." *See Mata v. State*, 226 S.W.3d 425, 433 (Tex. Crim. App. 2007). Trial counsel and the court in this case were proactive in resolving any problems arising from counsel's hearing impairment. Co-counsel assisted in pointing out when trial counsel was having trouble hearing, and the trial court gave co-counsel opportunities to relay the court's communications to trial counsel. Instead of holding whispered bench conferences, which trial counsel had difficulty hearing, the trial court excused the jury from the courtroom when lengthy issues arose so that discussions could take place at a normal speaking volume. In one instance, the court stated on the record that "one of the things I watch for is whether or not anyone in the courtroom is having trouble hearing, and I have not noticed Mr. Oliver having any trouble hearing the witness." The record does not support

9

Dent's claim that trial counsel's hearing impairment rendered his assistance inadequate under *Strickland*.

### *Admission of extraneous offenses*

Dent asserts that trial counsel opened the door to a number of Dent's prior extraneous offenses involving his assaultive and threatening conduct toward his great-grandparents. The record does not bear out this assertion. It shows that Odessa, who was reluctant to testify against Dent, denied that Dent hit her during the incident and denied or minimized past incidents of abuse. The record reflects that Odessa's trial testimony led to the trial court's ruling permitting the State to go into the extraneous offenses. As rebuttal to Odessa's denial of the incident, the State proffered evidence of Dent's numerous, similar prior offenses against Odessa and Charles. In seeking admission of this evidence, the State argued that the prior offenses were relevant to Dent's motive and intent, and that his conduct was not the result of a mistake.

The trial court ruled that two of the prior offenses involving Dent's assault of his great-grandmother were "[a]dmitted to extent they show mal intent toward Mrs. Williams; but "if she starts denying these things on the witness stand, extraneouses, especially where there is a conviction and he pled guilty or no contest, . . . may well come in to show his intent." Odessa denied that Dent hit her in the prior assaultive offenses. In allowing the State to introduce evidence of the

10

remaining offenses before the jury, the trial court explained that it considered other testimony in addition to Odessa's denials:

> And just so the record is clear, one of the things I'm considering is that she said she thinks he has changed; and that opens the door to while after this, after he did X, he didn't change, did he? And after he did Y, he didn't change, did he?"
>
> So, I think the record is pretty clear the State's entitled to go into all of those offenses except the one I have already admonished you about. So, the Defense objection is overruled.

The defense's cross-examination of Odessa focused on the evidence of the offenses introduced by the State; it did not open the door to additional evidence of prior bad acts. Consequently, the record does not support Dent's claim that trial counsel rendered ineffective assistance on this ground.

### *Co-counsel's conduct during the punishment phase*

Dent complains that co-counsel rendered ineffective assistance during the punishment phase in two respects. First, Dent contends that co-counsel failed to investigate and develop evidence of Dent's mental illness as a mitigating factor during punishment. At the hearing on the motion for new trial, Dent's new counsel introduced state records showing that Dent had been diagnosed with psychosis and bipolar disorder, and that he previously attempted to commit suicide.

In considering whether trial counsel conducted an adequate investigation for potential mitigating evidence, we focus on whether the investigation supporting counsel's decision not to introduce evidence of Dent's mental health problems as

11

mitigation evidence was reasonable. *See Freeman v. State*, 167 S.W.3d 114, 117 (Tex. App.—Waco 2005, no pet.) (quoting *Wiggins v. Smith*, 539 U.S. 510, 523, 123 S. Ct. 2527, 2536 (2003)). Counsel's representation is ineffective if counsel failed to adequately investigate the issue. *Wiggins*, 539 U.S. at 521, 123 S. Ct. at 2535; *see also Freeman*, 167 S.W.3d at 117.

The record shows that defense counsel was aware that Dent had mental health problems. It also shows that Dent was a multiple substance abuser and, while his mental illness was readily controlled by medications, Dent did not comply with his medication regimen. In considering the issue during the hearing on Dent's motion for new trial, the trial court observed that "the big dispute is, is it the mental illness that causes the problems, or is it the poly-substance abuse?" The record shows that Dent's assaults and threats against his great-grandparents occurred over a span of a decade. Dent had been arrested thirty times and referred to detox twenty-five of those times. Odessa's testimony indicated that she believed Dent was on drugs when he became violent toward her, and he demanded money so that he could pay for drugs. These circumstances are not like those in the cases relied on by Dent. *See Wiggins*, 539 U.S. at 522, 123 S. Ct. at 2536 (counsel conducted inadequate investigation of defendant's background where evidence in habeas corpus record showed investigation would have revealed that defendant had limited intellectual capacity and, as a child, suffered from severe physical and

12

sexual abuse at hands of his mother, a chronic alcoholic, and while in care of a series of foster parents); *see also Freeman*, 167 S.W.3d at 119–21 (counsel conducted inadequate investigation where evidence on motion for new trial showed that defendant had been hospitalized for psychotic episodes and received treatment shortly before offense, expert opined that condition showed the potential for insanity diagnosis and defense, and trial counsel's testimony showed that defendant's mental health issues did not play a significant role in trial strategy). The record in this case is silent about trial counsel's reasons for not presenting evidence of Dent's mental health history, and "we will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440. The record supports the presumption that co-counsel made a tactical decision not to raise Dent's mental illness as a mitigating factor because it would open the door to evidence that he abused drugs and was violent while on drugs.

Dent also contends that co-counsel's closing argument at punishment amounted to ineffective assistance. The challenged portion reads as follows:

> Today you're the Government. The buck stops here. You decide what happens. What's the worst thing that can happen? You can let Jonnie out of jail. He can go home and do violence to his great grandparents. That's the worst thing that could happen. That's the thing that the Government, you, doesn't want to let happen.

The State waived the right to open and reserved the right to close. That decision meant that defense counsel had to anticipate the State's arguments to make an effective closing argument, and these statements, when read in context, reflect that effort. Co-counsel recited the State's position, but then asked the jury to consider that the State had gone against Dent's grandparent's wishes in prosecuting the case and to respect the Williamses' trust and love for Dent by "[s]entenc[ing] him to the minimum time that you possibly can in good conscience." Viewed in context, co-counsel's punishment-phase closing argument reveals a reasonable trial strategy; thus, Dent fails to show that counsel's performance was deficient.

## II.     Failure to Strike Venire Panel

Dent complains that the jury panel was irreparably tainted after it witnessed defense counsel's behavior during voir dire and that as a result, the trial court erred in refusing to strike the panel. As the functional equivalent of a motion for mistrial, we review the trial court's ruling on a request to strike the jury panel for an abuse of discretion. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *see also Austin v. State*, 222 S.W.3d 801, 815 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The trial court made a considered decision during voir dire and determined that, though the numbers were close, enough panel members who stated that they would not be biased against Dent as a result of counsel's behavior remained to seat a jury. Our review of the record in the context of Dent's

14

*Strickland* claim showed no evidence that the trial court seated any panel member who expressed the opinion that trial counsel's brief outburst affected their ability to consider Dent's claim. Under the circumstances, we hold that the trial court did not abuse its discretion in refusing to strike the panel.

## III. Assessment of Costs

Dent contends that the $334 award of court costs recited in the judgment is not supported by sufficient evidence. The district clerk must keep a record of each fee or item of cost charged for a service rendered in a criminal action or proceeding. TEX. CODE CRIM. PROC. ANN. art. 103.009(a)(1) (West 2006). If a criminal action is appealed, an officer of the court must certify and sign a bill of costs and send it to the court to which the action is appealed. TEX. CODE CRIM. PROC. ANN. art. 103.006 (West 2006). In this case, the clerk's record contains a bill of costs.

Because it received the bill of costs after it signed an initial judgment assessing $279 in court costs, the trial court entered a judgment nunc pro tunc to correct the assessment to the $334 reflected in the bill of costs. The trial court may correct clerical, but not judicial, omissions or errors in a judgment after the trial court loses its plenary jurisdiction through a judgment nunc pro tunc. *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994). The complete appellate record in this case was filed in this court on March 7, 2013—after the nunc pro

tunc judgment was signed on February 14, 2013.  Accordingly, the trial court had jurisdiction to sign the nunc pro tunc judgment.  *See* TEX. R. APP. P. 25.2(g); *Meineke v. State*, 171 S.W.3d 551, 558 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (trial court lacks jurisdiction to enter a judgment nunc pro tunc after the appellate record for the case is filed); *see also Green v. State*, 906 S.W.2d 937, 939 (Tex. Crim. App. 1995) (interpreting former appellate rule 40(b)(2), predecessor to current rule 25.2).

Citing *Jelks v. State*, 397 S.W.3d 759 (Tex. App.—Houston [14th Dist.] 2013, pet. filed), Dent contends that the bill of cost assessment is invalid because it lacks the required signature.  Dent acknowledges that, unlike the bill in *Jelks*, the one in his case contains a signature, but he complains that the signature has no effect because it postdates the date of filing.  *Jelks* examined the language in article 103.001 of the Texas Code of Criminal Procedure, which provides:

> A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost.

TEX. CODE CRIM. PROC. ANN. art 103.001.  The signature of a Harris County deputy district clerk dated February 2, 2013 appears on the last page of the cost bill assessment.  The trial court entered the judgment nunc pro tunc on February 4, 2013.  The cost bill assessment, containing the deputy clerk's signature, complied with article 103.001 before the trial court entered the judgment nunc pro tunc.  We

16

hold that the judgment nunc pro tunc validly charges Dent with the costs reflected on the signed cost bill assessment.

We therefore proceed to consider whether sufficient evidence supports the assessment of $334 in costs, reviewing the record in the light most favorable to the award in measuring the sufficiency of the evidence to support an assessment of costs. *See Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010).

A defendant convicted of a felony offense must pay certain statutorily mandated costs and fees, which vary depending on the type of offense, the underlying facts, and procedural history of the case. *See Owen v. State*, 352 S.W.3d 542, 546 n.5 (Tex. App.—Amarillo 2011, no pet.) (listing Texas statutes requiring convicted persons to pay costs and fees). The record shows that a jury convicted Dent of a felony in district court, supporting each of the following costs listed in the bill of costs:

- $50 "serving capias" (TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(2) (West Supp. 2013) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $50 for executing or processing an issued arrest warrant, capias, or capias pro fine. . . .""));
- $40 "summoning 08 witness/mileage" (TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3) (West Supp. 2013) ("A defendant convicted of a felony or a misdemeanor shall pay . . . $5 for summoning a witness."));
- $5 "jury fee" (TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(7) (West Supp. 2013) ("A defendant convicted of a felony or a misdemeanor shall pay . . . $5 for [services of peace officers in] summoning a jury"));

17

- $5 "commitment" and $5 "release" (TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(6) (West Supp. 2013) ("A defendant convicted of a felony or a misdemeanor shall pay the $5 for [services performed by peace officers in connection with] commitment or release . . . ."));

- $40 "clerk's fee" (TEX. CODE CRIM. PROC. ANN. art. 102.005(a) (West 2006) ("A defendant convicted of an offense in . . . a district court shall pay for the services of the clerk of the court a fee of $40."));

- $20 "jury fee" (TEX. CODE CRIM. PROC. ANN. art. 102.004(a) (West 2006) ("A defendant convicted by a jury in a . . . district court shall pay jury fee of $20."));

- $5 "security fee" (TEX. CODE CRIM. PROC. ANN art. 102.017(a) (West Supp. 2013) ("A defendant convicted of a felony offense in a district court shall pay a $5 security fee as a cost of court."));

- $133 "consolidated court cost" (TEX. LOC. GOV'T CODE ANN. § 133.102(a) (West Supp. 2013) ("A person convicted of an offense shall pay as a court cost, in addition to all other costs . . . $133 on conviction of a felony. . . ."));

- $4 "jury reimbursement fee" (TEX. CODE CRIM. PROC. ANN. art. 102.0045(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services as provided by Section 61.0015, Government Code."));

- $25 "DC records preservation" (TEX. CODE CRIM. PROC. ANN. art. 102.005(f) (West 2006) ("A defendant convicted of an offense in . . . a district court shall pay a fee of $25 for records management and preservation services performed by the county as required by Chapter 203, Local Government Code."));

- $2 "support of indigent defense" (TEX. LOC. GOV'T CODE ANN. § 133.107(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2 to be used to fund indigent defense representation through the fair defense account established under Section 79.031, Government Code."));

- $6 "support of judiciary fee" (TEX. LOC. GOV'T CODE ANN. § 133.105(a) (West 2008) ("A person convicted of any offense, other than an offense

relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $6 to be used for court-related purposes for the support of the judiciary.")); and

- $4 "court technology fund" (TEX. CODE CRIM. PROC. ANN. art. 102.0169(a) (West Supp. 2013) ("A defendant convicted of a criminal offense in a . . . district court shall pay a $4 . . . district court technology fee as a cost of court.")).

The fine and costs listed in the cost bill assessment total $344, ten dollars more than the amount assessed in the judgment nunc pro tunc. Because the record supports assessment of $344, and the bill recites $344 as the "total amount owed," we modify the judgment to correct the trial court's clerical error and assess $344 as the total amount of costs that Dent owes.

## Conclusion

We hold that Dent has not satisfied his *Strickland* burden; the trial court did not abuse its discretion in refusing to strike the jury panel; and sufficient evidence supports the assessment of $344 in costs. We therefore modify the judgment to assess $344 in costs and affirm the judgment as modified.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

19