**Kenneth Wayne FREEMAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–03–00267–CR.**

Court of Appeals of Texas,
Waco.

April 20, 2005.

---

Stan Schwieger, Waco, for appellant.

Roy Defriend, Limestone County Atty., Groesbeck, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Kenneth Wayne Freeman of aggravated sexual assault and assessed his punishment at seventy years' imprisonment. Freeman contends in three issues that: (1) the trial court abused its discretion by denying his motion for new trial premised on an ineffective-assistance-of-counsel claim; (2) his trial counsel provided ineffective assistance by failing to conduct an adequate investigation of his mental health history; and (3) trial counsel provided ineffective assistance by failing to pursue an insanity defense or offer evidence of Freeman's mental health history as mitigating evidence during the punishment phase. We will affirm the judgment of conviction, reverse that portion of the judgment assessing punishment, and remand this cause to the trial court for a new punishment hearing.

## Background

According to the testimony, Freeman confronted the complainant during the early morning hours and attempted to physically force her into her mobile home. She struggled with Freeman, who dragged her behind the house and hit her over the head with what she described as a chrome handgun. After further struggle, the complainant quit resisting, and Freeman raped her. DNA evidence strongly corroborated the complainant's identity of Freeman as her assailant.

That afternoon, officers were summoned to a potential suicide in progress. They found Freeman, who told them that "he felt he was going to hurt himself. He was having thoughts of hurting himself."

Freeman took the stand in his own defense. He testified that he did not remember anything about the events of the occasion in question. He described his mental health history to some extent, telling the jury of two hospitalizations in psychiatric facilities and treatment by MHMR. He described his diagnosis as "bipolar, paranoid, schizophrenic with homicidal [sic] tendencies." He denied ownership of a handgun. On cross-examination, he testified that he could not recall the three prior felony convictions with which the State sought to impeach him.

The jury rejected defense counsel's argument that the jury should acquit Freeman of aggravated sexual assault because the State had failed to prove beyond a reasonable doubt that he had a handgun.

At punishment, the State proved up Freeman's three prior felony convictions. Freeman's mother briefly testified about his schizophrenia diagnosis and his need for medical treatment and asked that he receive help for his condition.

## Standards of Review

We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex.Crim.App.2004). When as here the motion for new trial alleges ineffective assistance of counsel, we

must determine whether the trial court's determination of the ineffective assistance claim and denial of the motion for new trial were clearly wrong and outside the zone of reasonable disagreement. *See Bates v. State,* 88 S.W.3d 724, 727–28 (Tex.App.-Tyler 2002, pet. ref'd); *accord Keller v. State,* 125 S.W.3d 600, 606–07 (Tex.App.-Houston [1st Dist.] 2003), *pet. dism'd, improvidently granted,* 146 S.W.3d 677 (Tex. Crim.App.2004); *Edwards v. State,* 37 S.W.3d 511, 515 (Tex.App.-Texarkana 2001, pet. ref'd).

To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State,* 159 S.W.3d 98, 101–02 (Tex.Crim. App.2005) (same). Under *Strickland,* we must determine: (1) whether counsel's performance was deficient, and if so, (2) whether the defense was prejudiced by counsel's deficient performance. *Wiggins,* 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews,* 159 S.W.3d at 101.

### Adequacy of Investigation

■ "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.' " *Wiggins,* 539 U.S. at 521, 123 S.Ct. at 2535 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064); *accord Andrews,* 159 S.W.3d at 101. Counsel's representation may meet this standard if counsel fails to conduct an adequate pretrial investigation. *See Wiggins,* 539 U.S. at 533–34, 123 S.Ct. at 2541–42; *Bouchillon v. Collins,* 907 F.2d 589, 597 (5th Cir.1990); *Ex parte Welborn,* 785 S.W.2d 391, 396 (Tex.Crim. App.1990); *Hervey v. State,* 131 S.W.3d

561, 564 (Tex.App.-Waco 2004, no pet.); *Rivera v. State,* 123 S.W.3d 21, 31–32 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd); *Conrad v. State,* 77 S.W.3d 424, 426 (Tex. App.-Fort Worth 2002, pet. ref'd); *Milburn v. State,* 15 S.W.3d 267, 269–70 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins,* 539 U.S. at 521–22, 123 S.Ct. at 2535 (quoting *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066).

■ In a case such as Freeman's in which the issue is whether trial counsel conducted an adequate investigation for potential mitigating evidence, "we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [Freeman's] background *was itself reasonable.*" *Id.* at 523, 123 S.Ct. at 2536.

> Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case. Both conclusions would interfere with the "constitutionally protected

independence of counsel" at the heart of *Strickland*. We base our conclusion on the much more limited principle that "strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitations on investigation." A decision not to investigate thus "must be directly assessed for reasonableness in all the circumstances."

*Id.* at 533, 123 S.Ct. at 2541 (citations omitted).

Thus, various courts have found trial counsel's performance deficient where counsel failed to conduct an adequate investigation of the defendant's background for potential mitigating evidence. *See e.g. id.* at 516, 533–34, 123 S.Ct. at 2532–33, 2541–42 (counsel's limited investigation failed to disclose "evidence of the severe physical and sexual abuse petitioner suffered at the hands of his mother and while in the care of a series of foster parents"); *Bouchillon*, 907 F.2d at 595–97 (counsel failed to investigate defendant's medical history even though counsel was informed that defendant had been institutionalized on several occasions in the past); *Rivera*, 123 S.W.3d at 30–31 (counsel appointed for punishment phase failed to conduct adequate investigation of facts of defendant's cases [particularly of the defendant's role in the offenses] and of defendant's criminal history); *Conrad*, 77 S.W.3d at 426 (counsel failed to investigate defendant's mental status at time of offense after State's experts determined that defendant was competent and sane); *Milburn*, 15 S.W.3d at 269–70 (counsel failed to investigate and interview potential punishment witnesses who would have asked jury to consider minimum punishment).

Here, Freeman testified at trial about two psychiatric hospitalizations, one in Dallas and one in Terrell.[1] The officer who arrested Freeman testified that he did so at a hospital in Dallas where Freeman had been taken "because he reported he was having demons [and] needed help."

Freeman's appellate counsel introduced a number of Freeman's medical records in evidence during three[2] posttrial hearings. These records reflect that Freeman was hospitalized in Dallas in 1986 after an attempted suicide. After that, the records show that he had been receiving outpatient treatment for mental illness on a regular basis for more than a year before the date of the offense. Freeman had last been to MHMR about three weeks before the date of the offense.

Appellate counsel filed a post-trial motion for the appointment of a psychiatrist to examine Freeman and determine whether he was sane at the time of the offense. The court denied this initial motion. Counsel filed a motion to reconsider and offered the testimony of Freeman's MHMR psychiatrist, Dr. Shamji Badhiwala, who reviewed Freeman's medical records and testified about Freeman's condition and the potential for an insanity diagnosis. Dr. Badhiwala testified that, based on Freeman's medical history, it is possible that he could be diagnosed as

---

1. In a report prepared later by Dr. Stephen Mark with regard to Freeman's sanity at the time of the offense, Dr. Mark noted that Freeman was in the Dallas hospital from May 21–24, 2001 and in the Terrell hospital from May 24 to June 5, 2001.

2. Freeman's appellate counsel filed 3 posttrial motions: (1) a motion for a psychiatric examination to determine whether Freeman was sane at the time of the offense; (2) a motion to reconsider the denial of the motion for psychiatric examination; and (3) a motion for new trial alleging the same grounds of ineffective assistance of counsel now raised on appeal.

legally insane at the time of the offense. However, Dr. Badhiwala stressed that further examination would be required to make a diagnosis regarding Freeman's sanity. On cross-examination, Dr. Badhiwala agreed that Freeman's symptoms could have been exacerbated by his continuing use of drugs and alcohol.

Following this hearing, the court appointed Dr. Stephen Mark to examine Freeman regarding his sanity. Dr. Mark examined Freeman and concluded that he was sane at the time of the offense. In the hearing on Freeman's motion for new trial, Dr. Mark agreed that Freeman suffers from mental illness, but persisted in his conclusion that Freeman was sane at the time of the offense and competent at the time of trial. Dr. Mark postulated that one cause for Freeman's condition could be drug and alcohol abuse. He agreed that Freeman's medical history would be relevant punishment evidence.

Freeman's trial counsel testified in the motion for new trial hearing that he filed a pretrial motion to have Freeman examined by a psychiatrist for competency because he had difficulty communicating with Freeman about the case. The psychiatrist, Dr. Mark, examined Freeman and concluded that he was competent to stand trial.

Freeman's trial counsel testified that Freeman's parents told counsel that Freeman had been under a physician's care and "had had problems for a number of years." In addition, counsel testified that he questioned Dr. Mark's conclusion about Freeman's competency up to and during trial, though he did not pursue the issue further.

Freeman's trial counsel was not familiar with the records of Freeman's 1986 hospitalization or of the records of his inpatient and outpatient treatments from 2001 to 2002. Counsel testified that aside from the competency examination he did not investigate Freeman's mental health back-ground. Counsel testified that Freeman told him he was "self-medicating his psychosis with crack cocaine." Counsel explained that he believed, and the jury probably could infer, that Freeman was "in a mind-altered state" at the time of the offense due to the consumption of drugs or alcohol. However, counsel did not pursue this as mitigating punishment evidence because he did not believe "that would help with [the] jury."

Freeman's trial counsel conceded that he did not investigate Freeman's mental health history, even though counsel knew Freeman had a history of mental health issues. The State characterizes counsel's actions as trial strategy. However, counsel's testimony reflects two components of his trial strategy: (1) trying to persuade the jury that the State had failed to prove beyond a reasonable doubt that Freeman had a gun when he committed the assault; and (2) not presenting evidence of diminished capacity due to drug or alcohol use. From the testimony of Freeman's counsel, it does not appear that mental health issues played a significant role in counsel's trial strategy.

Counsel's failure to more fully investigate Freeman's mental health history can be excused as reasonable trial strategy only if we conclude that "reasonable professional judgment[ ] support[s] the [decision not to further investigate that history]." *Wiggins*, 539 U.S. at 533, 123 S.Ct. at 2541 (quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066). We cannot. *See Conrad*, 77 S.W.3d at 426 n. 13 ("It must be a very rare circumstance indeed where a decision not to investigate would be 'reasonable' after counsel has notice of the client's history of mental problems.") (quoting *Bouchillon*, 907 F.2d at 597). Thus, we conclude that Freeman's trial counsel failed to conduct an adequate pretrial investigation of Freeman's mental

health history. *See Wiggins*, 539 U.S. at 533–34, 123 S.Ct. at 2541–42; *Bouchillon*, 907 F.2d at 595–97; *Rivera*, 123 S.W.3d at 31–32; *Conrad*, 77 S.W.3d at 426; *Milburn*, 15 S.W.3d at 269–70; *cf. Brown v. State*, 129 S.W.3d 762, 767 (Tex.App.-Houston [1st Dist.] 2004, no pet.) ("We will not assume that counsel did not investigate [the defendant's sanity or competency] when the record is merely silent as to the depth of counsel's investigation."); *Valderas v. State*, 134 S.W.3d 330, 336–37 (Tex.App.-Amarillo 2003, no pet.) (similar complaint overruled where appellant failed to show that "trial counsel was either unaware of the existence of [mental health] records, failed to obtain such records, or that the records contained any information relevant to the issue of appellant's competency to stand trial.").

### Prejudice to Defense

■ To obtain reversal however, Freeman must also establish that counsel's deficient investigation prejudiced his defense. *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews*, 159 S.W.3d at 101.

To satisfy the second prong of the *Strickland* test, we do not require that the appellant show that there would have been a different result if counsel's performance had not been deficient. The defendant must show only that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Andrews*, 159 S.W.3d at 102 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068); *accord Wiggins*, 539 U.S. at 534, 123 S.Ct. at 2542. "In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins*, 539 U.S. at 534, 123 S.Ct. at 2542; *accord Rivera*, 123 S.W.3d at 32; *Milburn*, 15 S.W.3d at 270–71.

Freeman contends that there are two grounds for concluding that trial counsel's deficient investigation prejudiced the defense. First, appellate counsel contends that trial counsel's deficient investigation prevented him from pursuing an insanity defense. However, Dr. Mark examined Freeman and concluded that he was not insane at the time of the offense. Thus, we cannot say that the failure to more fully investigate Freeman's mental health history prejudiced his defense during the guilt-innocence phase. *Cf. Conrad*, 77 S.W.3d at 426–27 (counsel's failure to investigate defendant's mental health history did not prejudice defendant because defendant offered no evidence at hearing on motion for new trial that he was legally insane). Accordingly, we hold that the trial court's denial of Freeman's motion for new trial on this basis was not clearly wrong and outside the zone of reasonable disagreement. *See Keller*, 125 S.W.3d at 606–07; *Bates*, 88 S.W.3d at 727–28; *Edwards*, 37 S.W.3d at 515.

■ Freeman also contends that counsel's deficient investigation precluded him from developing mitigating evidence for the punishment phase. The State's punishment case consisted solely of a sheriff's deputy who compared Freeman's fingerprints to those on a penitentiary packet reflecting two prior felony convictions (for robbery in 1986 and possession of a controlled substance in 1988) and to those on a judgment reflecting a 1992 conviction for felon in possession of a firearm. In response, Freeman's mother testified, describing her son's condition and asking that he receive help for it.

Freeman's counsel asked the jury to assess punishment at thirty years or less because of his drug abuse problem. The

State argued that, based on Freeman's prior convictions and the violent nature of the crime, the punishment should be much higher.

Although Freeman's mother did ask the jury to take her son's condition in consideration when assessing punishment, the jury received only lay testimony from Freeman and his mother regarding his mental illness. Freeman's counsel concedes that he made no investigation of Freeman's mental health history.

> [Freeman] has demonstrated prejudice in this case, even though it is sheer speculation [3] that [evidence of his mental illness and his medical history] would have in fact favorably influenced the jury's assessment of punishment. Mitigating evidence clearly would have been admissible. The jury would have considered it and possibly been influenced by it.

*Milburn*, 15 S.W.3d at 271 (footnote added) (citation omitted).

■ Freeman's trial counsel admittedly failed to investigate Freeman's mental health history, and there is a reasonable probability that the results of the punishment phase would have been different if counsel had conducted an adequate investigation. *See id.* However, a trial court has no authority to grant a new trial as to punishment alone. *State v. Hight*, 907 S.W.2d 845, 846–47 (Tex.Crim.App.1995); *Junious v. State*, 120 S.W.3d 413, 416 n. 3 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). Thus, we hold that the trial court's denial of Freeman's motion for new trial on this basis was not clearly wrong and

outside the zone of reasonable disagreement. *See Keller*, 125 S.W.3d at 606–07; *Bates*, 88 S.W.3d at 727–28; *Edwards*, 37 S.W.3d at 515. Accordingly, we overrule Freeman's first issue.

Nevertheless, because we have concluded that Freeman's trial counsel performed an inadequate pretrial investigation of Freeman's mental health history and that this failure prejudiced Freeman's punishment case, we sustain Freeman's second and third issues in part.

We affirm the judgment of conviction, reverse that portion of the judgment assessing punishment, and remand this cause to the trial court for a new punishment hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2004–2005).

---

**3.** It could be that after conducting such an investigation Freeman's counsel may make the strategic decision that the available evidence concerning Freeman's condition and history should not be offered at punishment. However, by deciding before an investigation, trial counsel made an uninformed decision. *See Wiggins v. Smith*, 539 U.S. 510, 534–35, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471

(2003); *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App.1990) ("It may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation which would enable him to make an informed rational decision.").