**Opinion issued July 10, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00379-CR

———————————

**ROBERT JOSEPH LEVY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1344743**

---

## MEMORANDUM OPINION

A jury convicted appellant Robert Joseph Levy of robbery. *See* TEX. PENAL

CODE ANN. § 29.02 (West 2011). The trial court found it true that Levy had been

twice convicted of burglary, and it sentenced him to thirty-five years in prison. *See*

*id.* § 12.42(b). Levy now appeals, arguing that his counsel was ineffective at his

punishment hearing. He claims that the lawyer failed to adequately investigate his history of mental illness or offer it as mitigation evidence at the punishment hearing. However, because Levy has failed to overcome the strong presumption that his counsel exercised reasonable professional judgment for reasons of sound trial strategy, we affirm.

## Background

Levy robbed a stranger at a Houston motel. After knocking at the door of the complainant's room, Levy found the door unlocked and slightly ajar, and he entered uninvited. He told the complainant he would rob him, pushed him down onto the bed, and beat him with his fists. He demanded money and absconded with the complainant's cash, mobile phone, and car keys.

A grand jury indicted Levy for robbery. Before trial, Levy filed a motion asking that Harris County Forensic Psychiatric Services evaluate his sanity and competence to stand trial. A licensed psychologist, Ramon Laval, Ph.D., performed the assessments. He interviewed Levy and reviewed both his jail medical chart and criminal record. Dr. Laval submitted two reports addressing sanity at the time of the offense and competence to stand trial. Although the reports concluded that Levy had been sane and that was he fit for trial, they nonetheless also indicated that he suffered from mental illness. Under the heading "Clinical Observations and Findings," Dr. Laval wrote in each report:

A thirty-four year-old African-American male, Mr. Robert Levy presented to this evaluation as cooperative and responsive to questions. He was calm and alert, and oriented with respect to place, time, person and situation. His affect was constricted in range, and his mood was dysphoric. Regarding his current emotional state, Mr. Levy remarked, "I'm depressed." He denied suicidal thoughts. He denied aggressive impulses explaining "I'm not like that, not violent." Regarding hallucinations, he indicated that he hears "crazy stuff." Asked to elaborate, he responded, "All kinds of crazy stuff but I try to block them out." He reported that he sometimes sees "my friend; he died in my lap in '97, a gunshot wound. That's why I said I would never take anything from nobody. I've always helped people, even when I was on drugs." He did not disclose, and there was no evidence of paranoid thoughts or delusional ideas in his presentation. His speech was clear and coherent, and of normal volume, tone and rate of speed. His thought processes were logical, organized and goal-directed. He presented as cognitively intact, seemed not to be responding to or preoccupied with internal stimuli, and there was no evidence of impairment in his attention concentration or memory functions.

. . . .

Regarding mental health issues, Mr. Levy indicated that he started receiving psychiatric treatment at the age of eighteen. He denied psychiatric hospitalizations. He noted that the last time he had taken psychotropic medication was sometime last year. He stated that he is currently taking Trazodone. Regarding substance abuse, he denied the use of alcohol but admitted to a history of marijuana, PCP, and crack cocaine abuse. Mr. Levy's Harris County Jail medical chart documents that he underwent an initial psychiatric assessment on April 22, 2012. It is noted that he had a previous diagnosis of Major Depressive Disorder which has been "on full remission" prior to this incarceration. He was noted to be alert and oriented with respect to place, time and person. He was somber, withdrawn, depressed with a dysphoric and constricted affect. His thought processes were goal directed and he denied psychotic symptomatology. He admitted to a history of PCP, cannabis, and cocaine abuse. He was diagnosed with Depressive Disorder Not Otherwise Specified and Polysubstance

Dependence. According to records, he is only taking Trazodone for depression and to help him sleep.

Under the heading of "Diagnosis," Dr. Laval wrote: "The results of this evaluation are consistent with a diagnostic impression of Polysubstance Dependence and Depressive Disorder Not Otherwise Specified with psychotic symptoms of questionable validity."

After the court received Dr. Laval's reports, a trial was held. The jury found Levy guilty of robbery. At the subsequent punishment hearing, Levy stipulated to nine prior offenses, including two prior convictions for burglary of a habitation, three convictions for unauthorized use of a motor vehicle, two convictions for possession of a controlled substance, a conviction for indecent exposure, and a conviction for theft. The defense rested without offering evidence.

The State offered a short closing statement in which it directed the court's attention to "numerous prior felony convictions" and asserted that Levy "took advantage of a vulnerable victim in vulnerable circumstances without any provocation, without any justification." The State requested a prison sentence between thirty and forty years. In his closing statement, defense counsel began by acknowledging that the "criminal history speaks for itself." He then argued that Levy nevertheless deserved the minimum twenty-five year sentence, since the complainant "did not suffer any long-term injuries" and "[t]here was no hospitalization or medical attention required at the scene." At the close of the

hearing, the judge imposed a sentence of thirty-five years in prison. Levy timely filed notice of appeal.

## Analysis

Levy argues that he received ineffective assistance of counsel at his punishment hearing because his attorney failed to investigate his history of mental illness and did not introduce evidence of that history at the hearing.

Claims of ineffective assistance are evaluated with a two-part test: (1) whether the attorney's performance was deficient, i.e., did counsel make errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and if so, (2) whether that deficient performance prejudiced the party's defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

The adequacy of attorney performance is judged against what is reasonable considering prevailing professional norms. *Id.* at 688, 104 S. Ct. at 2065. There is a presumption that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial strategy. *Id.* at 689, 104 S. Ct. at 2065. In the face of this presumption, a criminal defendant has the burden of showing by a preponderance of the evidence that his attorney failed to provide reasonably effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

5

To meet this burden, an ineffective-assistance claim "must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). In this case, Levy did not present his claim of ineffective assistance of counsel through a motion for new trial or other procedure allowing for supplementation of the record in the trial court. When a defendant thus raises his claim of ineffective assistance of counsel by direct appeal of his conviction, the Court of Criminal Appeals has observed that "[u]nder normal circumstances, the record . . . will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone*, 77 S.W.3d at 833. As the Court has explained, the "reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

One reason the record on direct appeal is normally insufficient to show deficient performance is that it lacks an explanation by trial counsel of the actions challenged as ineffective. *See id.* at 111. In this regard, the Court of Criminal Appeals has held that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Id.* If counsel is not afforded this opportunity, then "an appellate court should not find deficient

6

performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

With respect to the second prong of *Strickland*, an error in professional assistance is prejudicial to a criminal defendant if it had an effect on the judgment. 466 U.S. at 691, 104 S. Ct. at 2066. A defendant need not establish such an effect by a preponderance of the evidence but need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* As the Supreme Court explained, "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.*

## I. Adequate investigation

Levy argues that his trial counsel conducted an inadequate investigation of his mental health. He contends that the reports of Dr. Laval should have alerted his counsel to his history of mental health problems and generated further investigation. He notes that the record does not contain an *Ake* motion for appointment of an expert witness or a motion requesting expenses to appoint a private investigator. *See Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087 (1985)

7

(holding that the State must assure an indigent defendant access to a competent psychiatrist when the defendant's sanity at the time of the alleged offense is a significant factor at trial). He also emphasizes that counsel offered no evidence of and made no reference to matters of mental health at the punishment hearing.

Failure to conduct an adequate investigation may constitute ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 521–23, 123 S. Ct. 2527, 2535–36 (2003). As the Supreme Court said in *Strickland*, "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691, 104 S. Ct. at 2066.

Levy relies on several cases in which courts held an attorney who failed to investigate a client's mental illness performed deficiently. In *Conrad v. State*, 77 S.W.3d 424 (Tex. App.—Fort Worth 2002, pet. ref'd), the appellant was convicted and moved for a new trial. 77 S.W.3d at 425–26. At a hearing on the motion, he called his trial counsel to testify. *Id.* On the stand, the attorney testified that he had relied on the reports of two experts, appointed by the court at the request of the state, who concluded that the appellant had been sane at the time of his alleged offense and competent to stand trial. *Id.* at 426. Counsel admitted that he had

neither discussed the reports with their authors nor performed an independent investigation of the appellant's mental health. *Id.* For example, he had not spoken with physicians who treated the appellant at the hospital or reviewed the appellant's medical records. *Id.*

Similarly, in *Freeman v. State*, 167 S.W.3d 114 (Tex. App.—Waco 2005, no pet.), the appellant's new attorney, appointed post-trial, filed a motion for new trial. 167 S.W.3d at 118 n.2. Appellant's trial counsel testified at the subsequent hearing. *Id.* at 119. He "conceded that he did not investigate [the appellant's] mental health history, even though [he] knew [the appellant] had a history of mental health issues." *Id.* As the evidence adduced at the hearing showed, the appellant had a long list of mental health problems that included out-patient treatment and hospitalizations. *Id.* Faced with this evidence, the court of appeals found that trial counsel had conducted an inadequate investigation. *Id.* at 119–20.

The third case relied upon by Levy, *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990), reached the Fifth Circuit through a federal petition for habeas corpus. 907 F.2d at 591. The petitioner's trial counsel testified at the federal habeas hearing. As the Fifth Circuit described it, "Bouchillon's trial counsel did not deny that Bouchillon told him he had mental problems, had been institutionalized and was on medication." *Id.* at 596. Yet, "[h]e made no phone calls, did not request Bouchillon's medical records, did not talk to witnesses regarding Bouchillon's

mental problems—in short, he did no investigation of any kind because he said that Bouchillon appeared rational." *Id.* Given these omissions, the Fifth Circuit concluded that counsel's performance fell below reasonable professional standards. *Id.* at 597.

Each of these cases is distinguishable from the one before us. In all three cases, the appellants supported their claims of ineffective assistance of counsel with evidence adduced at hearings on motions for new trial or a petition for a writ of habeas corpus. The evidence included testimony of trial counsel addressing what was known about the appellant's mental health and what steps were taken in response that information. This is not true of the record before us, which is entirely devoid of any explanation from Levy's trial counsel.

Levy argues that the reports authored by Dr. Laval should have prompted his trial counsel to conduct further investigations. But even if we assume that to be the case, the record is silent as to what investigative steps counsel actually may have taken and what conclusions he may have subsequently drawn. "We will not assume that counsel did not investigate a defense when the record is merely silent as to the depth of counsel's investigation." *Brown v. State*, 129 S.W.3d 762, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986)). The absence from the record of a motion to appoint an expert or private investigator and counsel's failure to broach issues of

mental health at the punishment hearing are not to the contrary. Counsel was not given an opportunity to explain these omissions, and "[w]hen the record is silent as to counsel's trial strategy, an appellate court may not speculate about why counsel acted as he did." *Id.* (citing *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)).

Absent an explanation from Levy's trial counsel for not seeking appointment of a psychological expert or investigator, we must only find deficient performance if the challenged conduct was so outrageous that no competent attorney would have done likewise. *See Goodspeed*, 187 S.W.3d at 392. Even assuming that any competent attorney would have spoken with a psychological expert about the reports, the absence of a motion to appoint an expert does not conclusively establish that Levy's counsel failed to consult with one.

## II.    Presentation of mitigating evidence

Levy also contends that his trial counsel should have offered evidence of his mental health problems at his punishment hearing and that failure to do so was ineffective assistance of counsel. In particular, he argues that his counsel should have introduced Dr. Laval's reports and invoked them in his argument to the trial court.

Apart from Dr. Laval's reports, Levy does not identify what mental health evidence his trial counsel could have offered but neglected to produce. Levy has

11

the burden of establishing that his counsel's performance was deficient by a preponderance of the evidence, *Bone*, 77 S.W.3d at 833, and "'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield*, 363 S.W.3d at 592. Aside from his reliance on Dr. Laval's reports, Levy's claim that his counsel was ineffective in failing to offer mental health evidence does not meet this standard. *See Lee v. State*, 186 S.W.3d 649, 659 (Tex. App.—Dallas 2006, pet. ref'd) (holding that appellant did not demonstrate ineffective assistance of counsel when his claim did "not identify the specific witnesses appellant could have called, what their testimony would have been, and how that testimony would reasonably have resulted in a different outcome.").

The record before us does not contain a statement by trial counsel explaining the reasons for the actions he took, including the decision not to introduce or rely upon Dr. Laval's reports at the punishment hearing. Since the record is silent as to counsel's strategy, we will not find deficient performance unless the conduct Levy now challenges was so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392; *Brown*, 129 S.W.3d at 767.

Dr. Laval's reports, quoted above, were not unambiguously helpful for the defense: they recognized that Levy suffered from certain mental illnesses but they also described him as "cognitively intact" and capable of "thought processes [that] were logical, organized and goal-directed." While the former aspect of the report

could have been seen as mitigating Levy's guilt, the latter aspect could have been regarded as confirming his responsibility. Likewise, as the State argues in its brief, the reports described a history of drug abuse that could have weighed negatively by the trial court. Finally, the disorders diagnosed, "Depressive Disorder Not Otherwise Specified and Polysubstance Dependence," were not of such striking severity or plainly exculpatory character that only an incompetent attorney would fail to bring them to the court's attention.

## Conclusion

The record is silent as to trial counsel's reasons for his professional judgments that are now challenged as deficient performance. We overrule Levy's claims on direct appeal that his trial counsel furnished ineffective assistance by failing to investigate his mental health and by failing to present evidence or argument about his mental health at the punishment hearing. Accordingly, we affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack, Justice Massengale, and Justice Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).