COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| ANDREW CARLTON LIKE, | § | No. 08-23-00014-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 451st Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Kendall County, Texas |
| | § | |
| Appellee. | § | (TC# 8055) |

## MEMORANDUM OPINION

A jury found Appellant Andrew Carlton Like guilty of murder and assessed punishment of 28 years' imprisonment. Appellant challenges his conviction in one issue, arguing that he is entitled to a new trial because he received ineffective assistance of counsel from his trial attorneys. For the following reasons, we affirm.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background

On the evening of March 26, 2015, Appellant was driving with his mother, Ann Like, on Interstate 10 in Kendall County, Texas. Jesse Ybarra, who was driving behind Appellant, saw that

---

[1] This case was transferred from our sister court in San Antonio, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

Appellant was driving slowly in the right-hand lane and appeared to be talking on his cell phone. When Ybarra attempted to pass Appellant in the passing lane, Appellant's vehicle sped up "real fast," suddenly jerked to the right, and traveled off the side of a "very, very high" bridge. Ybarra did not see Appellant's vehicle's brake lights come on or any other indication of an attempt by Appellant to slow his vehicle. Ybarra pulled over and exited his vehicle, called 911, and saw Appellant's vehicle laying upside down on the ground below the bridge. Ybarra told the 911 operator that "it looked like [the driver] just yanked on the wheel and went right off the road." Another motorist, Melvin Gilbert, saw Appellant's vehicle flip several times after it left the highway and exited his vehicle to help. Gilbert and a responding officer, Deputy Tucker Webb, approached Appellant's vehicle and could hear Appellant yelling from inside the vehicle for help and for Gilbert and Webb to check on his mother. Appellant exited the vehicle through a window and would not cooperate with Webb's instructions because he was worried about his mother. Webb saw that she was unresponsive and still in her seat inside the vehicle. The paramedics later determined that she was deceased at the scene.

A subsequent review of the scene by crash-reconstruction experts showed that after Appellant's vehicle left the bridge, it traveled down an embankment in a straight line, crashed through a guardrail running alongside a road below the bridge, and continued straight for several hundred feet until it came to rest upside down near a creek running below the bridge and road. An analysis of Appellant's vehicle's "black box" showed that Appellant's vehicle was traveling over 100 miles per hour during the crash and Appellant had "completely depressed" the accelerator immediately prior to the crash. He did not stop accelerating or attempt to brake. In a video-recorded interview with law enforcement, Appellant stated that he had hit his head "very hard" in a previous incident and that he has a mental condition known as intermittent explosive disorder. Appellant

2

also stated that immediately before the crash, his mother told him, "kill us both," and grabbed the steering wheel of Appellant's vehicle.

### B. Procedural history

The State charged Appellant with murder and alleged the use of his vehicle as a deadly weapon. The State promulgated the theory that Appellant intentionally drove his vehicle off the bridge and caused Ann Like's death after an altercation with her. Appellant's trial attorney responded in his opening statement that, among other things, he anticipated the evidence would show that Appellant and Ann "both suffered from mental health issues," and his other attorney argued during closing statements in the guilt-innocence phase of trial that Appellant suffered from bipolar disorder and that "[n]o doubt [Appellant is] ill. He suffers from mental illness." Appellant's attorney also argued during the punishment phase of trial: "You're dealing with two people that were suffering from mental health issues, bipolar, depression, and they were both off their meds."

The jury found Appellant guilty of murder and made an affirmative deadly weapon finding. Appellant requested and received a jury instruction on the issue of sudden passion, but the jury made a negative sudden-passion finding and assessed punishment at 28 years' imprisonment. Appellant filed a motion for new trial that was overruled by operation of law. This appeal followed.

## II. DISCUSSION

Appellant challenges his conviction in one issue, arguing that his trial attorneys rendered ineffective assistance of counsel because of their failure to investigate and present evidence regarding Appellant's mental health conditions, which prejudiced his defense.

### A. Standard of review and applicable law

We review claims of ineffective assistance of counsel under the *Strickland v. Washington* standard. *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984)). Under this standard, a defendant must show both that trial counsel's performance was deficient and the deficient performance prejudiced the defense. *See id*. (citing *Strickland*, 466 U.S. at 687). "An attorney's performance is deficient if it is not within the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms[.]" *Id.* (citing *Strickland*, 466 U.S. at 689). "We indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable assistance, and that the challenged action might be considered sound trial strategy." *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004) (citation and internal quotation marks omitted). To show prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant bears the burden of proving that trial counsel was ineffective. *Id.*; *see Bone*, 77 S.W.3d at 833. A defendant's failure to show either deficient performance or prejudice will defeat his claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

"Under normal circumstances, the record on direct appeal will not be sufficient to show that trial counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone*, 77 S.W.3d at 833. Thus, although it is possible to raise claims of ineffective assistance of counsel on direct appeal, such claims are more effectively raised in habeas proceedings because the records in direct appeals are usually inadequate to determine whether trial counsel acted in a matter consistent with a reasonable trial strategy. *See id.*; *Ex parte White*, 160

4

S.W.3d at 49 n.1. "If trial counsel has not been afforded the opportunity to explain the reason for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava*, 415 S.W.3d at 308 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)).

### B. Analysis

Here, Appellant argues that his trial attorneys rendered deficient performance because they failed to fully investigate his mental health conditions. Appellant contends that his mental health conditions formed a central aspect of the case, and his attorneys should have presented his medical records and testimony from medical providers regarding his mental health conditions and how those conditions might have affected his behavior before, during, and after the crash. Appellant further argues that his attorneys' failures caused him prejudice because the jury otherwise would have weighed his mental health conditions more heavily in determining his credibility and deciding the case.

As discussed above, Appellant's attorneys mentioned the existence of Appellant's mental health issues during their arguments before the jury. Appellant's attorneys also elicited testimony from Appellant's brother, his father, and the State's expert witness regarding Appellant's diagnoses of bipolar disorder and traumatic brain injury. However, the record is bare of information regarding whether records of Appellant's mental health issues exist or whether any mental health professionals were available and would have been able to testify regarding his mental health conditions. Assuming such evidence exists, there is no indication that presenting such evidence would have been beneficial to Appellant's defense or that his attorneys did not have a reasonable trial strategy in deciding not to present such evidence. And although Appellant filed a motion for new trial on the ground that "[t]he verdict is contrary to the law and evidence in the

5

case," the trial court did not hold a hearing on the motion and no evidence regarding trial counsels' performance was presented in support of the motion.[2] Absent evidence in the record that the claimed evidence was available and would have benefitted Appellant's case, we are only able to speculate as to whether Appellant's attorneys rendered deficient performance through these failures or whether such failures caused prejudice to Appellant's defense.

While it may be possible to develop the record on this issue further in a writ of habeas corpus under TEX. CODE CRIM. PROC. ANN. art. 11.07, the record before us cannot support Appellant's allegation that his trial attorneys were deficient in their performance by failing to present additional evidence of Appellant's purported mental health issues or that he was prejudiced by these alleged deficiencies. *See Bone*, 77 S.W.3d at 833; *Ex parte White*, 160 S.W.3d at 49 n.1. For these reasons, Appellant's claim of ineffective assistance of counsel must fail. *See, e.g.*, *McWilliams v. State*, No. 08-16-00036-CR, 2017 WL 3614185, at *7 (Tex. App.—El Paso Aug. 23, 2017, no pet.) (not designated for publication) (in a claim for ineffective assistance of counsel based on trial counsel's failure to present expert testimony, absence of evidence in the record regarding what an expert would have testified to resulted in the defendant's failure to establish either *Strickland* prong); *Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd) (recognizing that trial counsel's failure to call witnesses or present evidence does not constitute ineffective assistance of counsel without a showing that the witnesses and evidence were available and would have benefitted the defendant's case) (citing *Butler v. State*, 716 S.W.2d 48,

---

[2] Appellant cites one case in which trial counsel's failure to investigate the defendant's mental health issues constituted deficient performance. *See Freeman v. State*, 167 S.W.3d 114, 119–20 (Tex. App.—Waco 2005, no pet.). However, that case involved evidence, including trial counsel's testimony regarding his performance, that had the benefit of being developed during a hearing on the defendant's motion for new trial. *See id.* at 116, 118–19. Such evidence is missing in the record before us, thus *Freeman* is distinguishable from this case.

6

55 (Tex. Crim. App. 1986) (en banc), and *Johnston v. State*, 959 S.W.2d 230, 236 (Tex. App.—Dallas 1997, no pet.)).

Accordingly, we overrule Appellant's sole issue.

## III. CONCLUSION

We affirm the judgment supporting Appellant's conviction.

LISA J. SOTO, Justice

June 26, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)