**Opinion issued June 4, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00288-CR

———————————

**AMEL GARZA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1783774**

---

## MEMORANDUM OPINION

A jury convicted Appellant Amel Garza of unlawful possession of a firearm and assessed punishment as thirty-five years' imprisonment. Appellant argues he received ineffective assistance of counsel. We affirm.

## Background

Appellant contends that, had his trial counsel investigated and introduced evidence of Appellant's mental-health history, the jury would not have convicted him or would have assessed a lesser punishment. The record reflects Appellant has an extensive history of mental-health issues. According to medical records Appellant included with his motion for new trial, his mental health deteriorated significantly in the months immediately prior to the events giving rise to this case. That period included multiple hospitalizations, suicidal and homicidal ideations, being placed into protective custody, and an emergency hospitalization about a month before being arrested for the conduct that led to this case. Appellant's medical records also reflect he used illegal drugs throughout this period, which may have been linked to his mental-health issues.

### A. Events leading to Appellant's arrest

In August 2022, Baytown police were dispatched to a convenience store to investigate a man threatening another man with a gun. As they were investigating, other 911 callers reported gunshots fired at a nearby intersection. Callers reported seeing a man with a handgun wearing a hooded sweatshirt and walking toward a school, "swinging" the gun as vehicles passed.

Officer Bret Rasch was at the convenience store but left to deal with the active-shooter calls. When he arrived, Officer Rasch saw Appellant holding a

handgun.  Officer Rasch instructed Appellant to drop the gun and get on the ground, and Appellant complied.  Other officers soon arrived.

Because the gun was near Appellant's hand, the officers instructed him to crawl on his stomach toward them.  Officer Rasch described Appellant as "behaving oddly" during this encounter, characterizing his movements as "very erratic . . . instead of just . . . crawling towards us in a simple fashion."  When the officers tried to detain Appellant, he resisted, spitting in one officer's face and biting another.  The officers tased Appellant multiple times and took him into custody.  The officers recovered the handgun and live ammunition from the scene.  Officer Rasch returned to the convenience store, where he reviewed surveillance footage which showed Appellant striking a man in the head with a handgun.

On cross-examination, Appellant's trial counsel asked Officer Rasch whether Appellant was "acting crazy" at the time of his arrest or "on drugs or anything like that."  Officer Rasch responded he believed Appellant was "likely under the influence of drugs."

## B.  Trial-court proceedings

The trial court appointed counsel to represent Appellant in August 2022, five days after his arrest and about a year-and-a-half before trial.  In September 2022, a grand jury indicted Appellant for unlawful possession of a firearm by a felon.  The

indictment also alleged Appellant has two prior felony convictions: failure to stop and render aid and aggravated assault of a public servant.

The case was tried to a jury in April 2024. Appellant stipulated he had previously been convicted of aggravated assault of a family member and was prohibited from possessing a firearm. The State introduced evidence of the events described above, including the surveillance videos of Appellant striking the man with the handgun. Appellant's trial counsel did not introduce any evidence about Appellant's mental-health history.

At the conclusion of the guilt/innocence phase, the trial court instructed the jurors that "[v]oluntary intoxication does not constitute a defense to the commission of a crime." The jury found Appellant guilty.

During the punishment phase, Appellant pled not true to the indictment's enhancement paragraphs. The State presented evidence Appellant had been previously convicted of numerous offenses, including for shooting at a SWAT vehicle called when Appellant was holding his girlfriend hostage, failure to stop and render aid after driving into and killing a pedestrian, and three separate charges of assault on a family member. The State also presented evidence Appellant had threatened to kill a 911 operator and her children and multiple police officers. Appellant's trial counsel did not introduce evidence of Appellant's mental-health history or call any witness during punishment.

4

The trial court instructed the jury that, if it found the enhancement paragraphs true, it could sentence Appellant from twenty-five to ninety-nine years or life in prison. The State asked the jury to sentence him to forty-five years. Characterizing Appellant's behavior as a "cry for help," Appellant's trial counsel asked the jury to find the enhancement paragraphs not true and sentence him to "between 5 and 12 years or 20 years." The jury sentenced Appellant to thirty-five years in prison.

## C.    Post-verdict proceedings

The trial court appointed appellate counsel for Appellant, who filed a motion for new trial arguing Appellant received ineffective assistance of counsel at both phases of trial because trial counsel did not investigate Appellant's mental-health history. Attached to the motion were hundreds of pages of Appellant's medical records, detailing his mental-health episodes in the months prior to his arrest. The motion was also supported by affidavits from Appellant's mother and the mother of one of his children, who averred they would have told trial counsel about Appellant's mental-health history had they been asked about it.

The trial court held a hearing on Appellant's new-trial motion. Appellant's trial counsel did not testify at the hearing but provided an affidavit in which he denied providing ineffective assistance. Trial counsel averred that he had concerns about speaking with Appellant's mother because Appellant had not given him

permission to speak with her, and because he "had to be careful of not being accused of tampering with a witness" since he was also representing Appellant in a separate aggravated-assault case in which Appellant's mother was the complainant. However, trial counsel also testified he spoke with Appellant's mother "more than a few times." She "never mentioned . . . that [Appellant] had ever been admitted to any hospital for psychiatric evaluation" or provided any documents regarding Appellant's mental-health history. Trial counsel also stated he had spoken with Appellant himself "many times," and Appellant "never mentioned . . . that he had ever been admitted to any psychiatric hospital or that he had any sort of mental illness." Trial counsel's affidavit does not state whether he made any efforts to investigate Appellant's mental-health history.

The trial court denied Appellant's motion, and this appeal followed.

**Analysis**

Appellant argues the trial court abused its discretion in finding Appellant did not receive ineffective assistance of counsel because Appellant's mental-health history would have led the jury to find he did not possess the necessary mental state for the charged offense or assess a lesser punishment.

**A.    Standard of review**

To prove he received ineffective assistance of counsel, a defendant must show (1) his counsel's performance was deficient and (2) the deficiency prejudiced

the defense. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first *Strickland* prong requires a defendant to establish his trial counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms and the necessity of the case. *Id.*; *In re M.F.*, No. 14-19-00964-CV, 2020 WL 2832166, at *7 (Tex. App.—Houston [14th Dist.] May 28, 2020, pet. denied) (mem. op., not designated for publication). "The defendant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the conduct constituted sound trial strategy." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (citation and internal quotation marks omitted).

Ineffective assistance of counsel may be raised in a motion for new trial. *See Smith*, 286 S.W.3d at 340. We review the trial court's ruling on such a motion under an abuse-of-discretion standard, reversing "only if the trial court's ruling was clearly erroneous and arbitrary." *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). "An abuse of discretion occurs only when no reasonable view of the record would support the trial court's ruling." *Cockerham v. State*, No. 01-21-00527-CR, 2023 WL 4628475, at *7 (Tex. App.—Houston [1st Dist.] July 20, 2023, no pet.) (mem. op., not designated for publication). In applying this standard, we review the evidence in the light most favorable to the trial court's

7

ruling, cognizant the trial court is the sole judge of witness credibility "with respect to both live testimony and affidavits." *Okonkwo*, 398 S.W.3d at 694.

**B.    Trial court did not abuse its discretion**

A lawyer's duty to provide effective assistance includes "the investigation of the facts and law applicable to a case." *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013) ("Counsel has a duty in every case to make a reasonable investigation or a reasonable decision that an investigation is unnecessary."). "When assessing the reasonableness of an attorney's investigation, a reviewing court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006).

"An investigation into every defendant's mental health history is not required," and "[c]ounsel is not required . . . to always investigate a defendant's psychiatric history to meet the effective-assistance-of-counsel standard." *Barnett v. State*, 344 S.W.3d 6, 17–18 (Tex. App.—Texarkana 2011, pet. ref'd). To trigger a duty to investigate a client's mental-health history, counsel must have been "put on notice of any potential mental issues" or otherwise had some indication that his client has a psychiatric history. *Id*. We have previously rejected that counsel has a duty to investigate his client's mental-health history in the absence of such an indication:

> In order to find that appellant received ineffective assistance, we would have to hold that counsel must *always* ask a defendant about his psychiatric history, even when there are no indicators of possible incompetency. Appellant presents no authority to support such a holding, and we will not now begin creating a list of mandatory questions that must be asked of defendants regardless of the circumstances surrounding the legal representation.

*Purchase v. State*, 84 S.W.3d 696, 700–01 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd).

The record contains no indication trial counsel was on notice of Appellant's mental-health issues, nor does Appellant's brief suggest he had such notice. To the contrary, Appellant concedes trial counsel was "unaware of [Appellant's] mental health history and its impact on his behavior before his arrest." And while Appellant contends that "all trial counsel had to do to become aware of evidence of [Appellant's] history of severe mental illness was talk to [his] mother," trial counsel averred in his affidavit that he spoke with Appellant's mother "more than a few times," during which she "never mentioned [Appellant] had ever been admitted to any hospital for psychiatric evaluation." Appellant thus points to no evidence suggesting trial counsel had notice of any factor that would require him to investigate Appellant's mental-health history. *See Barnett*, 344 S.W.3d at 17–18; *Purchase*, 84 S.W.3d at 700–01.

In her affidavit, Appellant's mother states that "if" trial counsel had spoken with her, she "would have made sure he knew about [Appellant's] history with

9

bipolar disorder and about his multiple psychiatric hospitalizations immediately before [his arrest]." Appellant's mother avers trial counsel "did not want to talk to [her] because I was not paying him" but also states she spoke with trial counsel on a "few occasions." Hence, Appellant's mother's affidavit indicates she spoke with trial counsel but did not inform him of Appellant's mental-health history. The trial court was free to reject her statement that she would have informed trial counsel about Appellant's mental-health history had they talked. *See Okonkwo*, 398 S.W.3d at 694.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court did not abuse its discretion in impliedly finding Appellant's trial counsel was not on notice of any factors that would indicate Appellant had a history of mental illness. *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

Our conclusion is underscored by cases in which appellate courts concluded trial counsel had a duty to investigate a client's mental-health history because the record contained some indication trial counsel was on notice of the client's mental-health issues. *See, e.g., LaHood*, 401 S.W.3d at 51–52 (counsel's failure to further investigate was unreasonable when counsel acknowledged her client "told her he was bipolar and was prescribed Zoloft, Risperadol, and Zyprexa"); *Guillory v. State*, 652 S.W.3d 499, 506 (Tex. App.—Houston [14th Dist.] 2022, no pet.)

("Appellant's affidavit, coupled with his mother's testimony at the bond hearing regarding his mental health history, show that mitigating evidence was available *and his attorney knew about it* but failed to present it at trial." (emphasis added)); *Morrow v. State*, 486 S.W.3d 139, 154 (Tex. App.—Texarkana 2016, pet. ref'd) (trial counsel "failed in his duty to investigate [his client's] mental health status" where trial counsel was advised "that immediately prior to the offense, [the client] was suffering from 'weeks' of sleep deprivation and depression, and that 'he [was] not thinking straight,'" and the record also reflected the client's "threat to commit suicide"); *Freeman v. State*, 167 S.W.3d 114, 119 (Tex. App.—Waco 2005, no pet.) (trial counsel "conceded that he did not investigate [the client's] mental health history, even though counsel knew [the client] had a history of mental health issues"). Our record contains no such indication.

Appellant points to the State Bar of Texas's Performance Guidelines for Non-Capital Criminal Defense Representation and the American Bar Association's Criminal Justice Standards for the Defense Function, arguing these guidelines establish standards under which "counsel should inquire about the symptoms that may potentially impact the client's culpability in the case" when "representing a client with mental illness." But the guidelines do not overcome the rule that counsel's duty to investigate the client's mental-health history is not triggered until counsel has some indication that such a history exists. *See Purchase*, 84 S.W.3d at

11

700–01. And while the Court of Criminal Appeals has "refer[red] to standards published by the American Bar Association and other similar sources as guides to determining prevailing professional norms" when considering ineffective assistance of counsel claims, it also recognizes they are not binding "because no set of detailed rules can completely dictate how best to represent a criminal defendant." *LaHood*, 401 S.W.3d at 50. These nonbinding guidelines do not compel a result different than that required by Texas law.

Appellant also contends trial counsel was ineffective by being the first person to raise the possibility Appellant was voluntarily intoxicated at the time of his arrest. During the guilt/innocence phase, Appellant's trial counsel asked Officer Rasch if Appellant's unusual behavior led Rasch to "believe [Appellant] was on drugs or anything like that." Rasch responded in the affirmative. Appellant argues this question compounded trial counsel's error of not presenting Appellant's mental-health evidence because it caused "the trial court to include an instruction about voluntary intoxication," thus "reducing the burden on the State to prove [Appellant] acted intentionally, knowingly, or recklessly." According to Appellant, this made it "all but inevitable he would be convicted." We disagree.

A voluntary-intoxication instruction "is appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions." *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App.

2009). This instruction does not affect the State's burden but "acts to re-affirm the mental-state requirements, not delete them." *Id*. at 28. "[T]he instruction operates to inform the jury that the elements of the offense, including the requisite mental state, are *not* affected by any evidence of intoxication." *Id*. (emphasis in original); *see also Davis v. State*, 313 S.W.3d 317, 330 (Tex. Crim. App. 2010) (Texas Penal Code § 8.04, which states voluntary intoxication "does not constitute a defense to the commission of a crime," "bars a defendant from using evidence of intoxication to challenge his culpable mental state"). Therefore, even if it was trial counsel's question that led to the voluntary-intoxication instruction, it did not reduce the State's burden. *See Sakil*, 287 S.W.3d at 26. Trial counsel's questions about Appellant's voluntary intoxication did not render his performance deficient.

Appellant has not established the first *Strickland* prong. We overrule Appellant's issues

## Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

13